IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00112-KDB-SCR

| | |
|---|---|
| 1ST CHOICE HOUSING, INC., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| BULLER RIVER DEVELOPMENT PARTNERS, | ) ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss" (Doc. No. 4) and the parties' briefs and exhibits. (Doc. Nos. 4-1, 10 & 11).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion be denied as discussed below.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Accepting the facts alleged in the Complaint as true, the parties entered into an "Offer to Purchase and Contract" (the "Contract") in October 2022 for four lots in Stones Edge located in Iredell County. (Doc. No. 1-2 at ¶ 3). The Contract included an Exhibit A that identified the lots as 131 and 135 Zircon Drive and 122 and 145 Gemstone Drive. (Id. at 18). Exhibit A also included the following provision, which is the subject of this lawsuit:

1

> After completion of the purchase of the above lots, 1st Choice will have the option to purchase any of the remaining lots at $23,750 each, as they may be available for sale within the next 24 months. Those lots are 119 Stones Edge Rd, 149 & 153 Gemstone Drive, 126, 130 & 138 Zircon, 106, 124, 159, 189, 147, 193 & 205 Titanium, 144 & 11 Peridot ["the 15 lots"].

Id.

The parties closed on the four lots and the sale was recorded on November 9, 2022, in Deed Book 2958, Page 1014 of the Iredell County Registry. (Id. at ¶ 4).

On or about April 24, 2023, Plaintiff, through its President Russell Fox, informed Defendant by calling its real estate agent, Tyler diPretoro, that Plaintiff was prepared to exercise its option to purchase "some or all" of the 15 lots at the agreed price of $23,750. (Id. at ¶¶ 3, 5).

The next day, Plaintiff received an email from diPretoro stating:

> Hello Mr. Russell:
> To follow up on our phone conversation yesterday, we are unfortunately not able to sell the lots at $23,750 due to grading that was done without our knowledge. Because of this, we now have plans to build on these lots in order to hopefully break even or better. With the holding costs and grading that was done, we have about $50,000 invested per lot.
> Again, we plan to build on these going forward to try and dig our way out of this hole.

(Id. at ¶ 6).

Since then, Plaintiff maintains it was ready to purchase the lots at the agreed price (Id. at ¶ 7), but Defendant told Plaintiff it "will not deliver a deed for the . . . lots at any time during the 24[-]month option period. . . ." (Id. at ¶ 8).

On June 14, 2023, Plaintiff filed this action in Iredell County Superior Court alleging breach of contract and seeking specific performance of the Contract, that is, transfer of the 15 lots at contract price of $23,750 each, or in the alternative "benefit of the bargain" damages, as well as an injunction relief. (Id. at ¶ 9).

On July 13, 2023, Defendant removed the state court action to the United States District Court for the Western District of North Carolina. (Doc. No. 1). Defendant asserts the existence of diversity of citizenship subject matter jurisdiction, which has not been challenged and appears proper. Plaintiff is a North Carolina corporation. (Doc. No. 1-2 at 2). Defendant is a general partnership whose partners are citizens of South Carolina or Auckland, New Zealand. (Id. at 2-3).[1] Plaintiff's Complaint includes a prayer for relief requesting a finding that Defendant is in breach of its contractual obligations involving the 15 lots at a contract price of $23,750 each, which would total $356,250, easily satisfying the $75,000 jurisdictional threshold. (Id. at 4).

## II. DISCUSSION

### 1. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[1] The citizenship of its individual partners is relevant for the purposes of determining the existence, or not, of diversity jurisdiction. See Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990). Defendant's individual partners are Estero Property Investments, Ltd., the sole owner of which is Vernon Lindsay Jarvis, a New Zealand national who lives in Auckland, New Zealand; PIOTC II, LLC, which is solely owned by Kevin Burrell, who lives in York, South Carolina; C&C Trust, a trust whose sole trustee and beneficiary is Chris Elisa, a New Zealand national who lives in Auckland, New Zealand; and Buller River Developments, LLC, a limited liability company owned solely by Estero Property Investments, Ltd., and PIOTC II, LLC. None of Defendant's individual partners are citizens or residents of North Carolina. Notice of Removal, (Doc. No. 1 at 2-3).

3

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era. . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be

prove[n] consistent with the allegations . . . a claim must be dismissed." Neitzke, 490 U.S. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

**2. Analysis**

Based on the undersigned's review of the Complaint, Plaintiff has plausibly stated and alleged facts to support a breach of contract claim. Under North Carolina law,[2] a simple breach of contract claim has two elements: (1) the existence of a valid contract; and (2) a breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Cater v. Barker, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 845 (2000). Here, Plaintiff alleges the existence of a valid contract (Doc. No. 1-2 at ¶ 3), which Defendant does not appear to dispute, and attaches a copy of the Contract to the Complaint. (Id. at 18). Plaintiff also alleges how Defendant breached the following contract term:

> After completion of the purchase of the above lots, 1st Choice will have the option to purchase any of the remaining lots at $23,750 each, as they may be available for sale within the next 24 months. Those lots are 119 Stones Edge Rd, 149 & 153 Gemstone Drive, 126, 130 & 138 Zircon, 106, 124, 159, 189, 147, 193 & 205 Titanium, 144 & 11 Peridot ["the 15 lots"].

(Doc. No. 1-2 at ¶ 3). Plaintiff provides details about contacting Defendant's agent, diPretoro, to exercise its option to purchase "some or all" of the 15 lots at the agreed price of $23,750 (Id. at ¶¶ 3, 5), and that Defendant told Plaintiff it "will not deliver a deed for the . . . lots at any time during the 24[-]month option period." (Id. at ¶¶ 6-8).

Defendant suggests it is more complicated that a simple breach of contract analysis. In its motion to dismiss, Defendant devotes its argument to establishing that the Contract at issue created

---

[2] Both parties agree that North Carolina law applies. (Doc. No. 4-1 and Doc. No. 10).

5

a right of first refusal rather than an option to purchase.[3] (Doc. No. 4-1). Defendant argues that until it made the lots available for sale, Plaintiff had no rights under the Contract or recourse to the Court. Defendant characterizes diPretoro's email as informing Plaintiff that the lots were not for sale. Id. at 2, 5. Plaintiff disputes Defendant's position and instead argues the Contract is an option contract based on the language in the contract provision "option to purchase."[4] (Doc. No. 10).

The essential elements of an option to purchase contract are: (1) a present offer to sell property that is described with reasonable certainty; (2) the offer to sell stipulates a fixed price to be paid for the property; (3) the offer to sell is made irrevocable for a stated period of time; and (4) the offer is a binding promise on the seller because the buyer gave some consideration in return for the promise of irrevocability. Carmon v. Cunningham, 161 N.C. App. 741, 590 S.E. 2d 23 (2003) (citing Kidd v. Early, 289 N.C. 343, 222 S.E.2d 392 (1976)). Plaintiff's Complaint includes allegations in support by detailing the contract provision describing the properties, noting the

---

[3] Defendant relies on a Maryland decision that does not apply North Carolina law, Paccar, Inc. v. Elliot Wilson Capitol Trucks, LLC, 923 F. Supp. 2d 745, 749 (D. Md. 2013) (citations omitted) ("A right of first refusal is distinct from an option: an option can compel a sale by the unwilling owner, whereas a right holder only has the right to receive an offer to buy" and "a right of first refusal gives the holder a contractual right that the property owner will give him or her the option to purchase, or refuse to do so, before selling to a third party."). Defendant also points to two North Carolina cases, New Bar P'ship v. Martin, 221 N.C. App. 302, 729 S.E. 2d 675 (2012) and Smith v. Mitchell, 301 N.C. 58, 269 S.E. 2d 608 (1980), for the general proposition that a right of first refusal "creates in its holder only the right to buy land before other parties if the seller decides to convey it." Mitchell, 301 N.C. at 61, 269 S.E. 2d at 610-11. While a helpful restatement of the law, the cases address factually different circumstances than the ones presented here.

[4] At this early stage, the undersigned makes no ultimate finding on whether the Contract is an option contract or a right of first refusal. Both parties urge the Court that the language is unambiguous, but by the same token take different positions on the parties' intent. The undersigned has considered these opposing scenarios, but still finds that Plaintiff has plausibly stated a claim based on allegations in the Complaint construed in a light most favorable to the Plaintiff. This disputed issue would be better suited for decision after additional discovery and further development of the case. See DFA Dairy Brands, LLC v. Primus Builders, Inc., No. 5:21-CV-00026-KDG-DSC, 2021 WL 5826785, at *3 (W.D.N.C. Dec. 8, 2021) (citing Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr., 594 F.3d 285, 290 (4th Cir. 2010) and IWTMM, Inc. v. Forest Hills Rest Home, 156 N.C. App. 556, 563, 577 S.E.2d 175, 179-80 (2003)).

agreed price of $23,750, referencing the 24-month period, and that consideration was given by the closing of the four original properties for $95,000.

Further, it is well-settled that "[w]hen the promisor to an executory agreement for the performance of an act in the future renounces its duty under the agreement and declares its intention not to perform it, the promisee may treat the renunciation as a breach and sue at once for damages." Gupton v. Son-Lan Dev. Co., 205 N.C. App. 133, 139, 695 S.E.2d 763, 768 (2010) (quoting Allen v. Weyerhaeuser, Inc., 95 N.C. App. 205, 209, 381 S.E.2d 824, 827 (1989)). "In order to maintain [such] a claim for anticipatory [repudiation], the words or conduct evidencing the renunciation or breach must be a positive, distinct, unequivocal, and absolute refusal to perform the contract when the time fixed for it in the contract arrives." Id. If this occurs, there "is a breach of the contract . . . even though it takes place long before the time prescribed for the promised performance and before conditions specified in the promise have ever occurred." Gupton, 205 N.C. App. at 140, 695 S.E.2d at 769 (quoting 9 Arthur L. Corbin, Corbin on Contracts § 959 (1951, interim ed. renewed 1979)).

Also, "when a party, whose obligation it is to fulfill a condition precedent contained in a contract, clearly repudiates his obligation to act in good faith and ensure that reasonable efforts are taken to fulfill the condition, the other party acquires rights under the contract and may sue to enforce those rights." Id. (citing Carson v. Grassmann, 182 N.C. App. 521, 525, 642 S.E.2d 537, 540 (finding that "[b]ecause plaintiffs have not acted in bad faith in failing to meet the condition precedent, defendants have no rights under the contract"), disc. review denied, 361 N.C. 426, 648 S.E.2d 207 (2007); Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 40 N.C. App. 743, 746, 253 S.E.2d 625, 628 (1979) (stating that when a "buyer's obligation [is] condition [ed] upon obtaining

7

financing," the buyer "implied[ly] promise[s] that [he] ... will act in good faith and make reasonable efforts to secure the financing")).

In the instant case, Plaintiff's allegations include Defendant's statement in an email that Defendant was "not able to sell the lots at $23,750." (Doc. No. 1-2 at ¶ 6). Instead, Defendant "plan[ned] to build on these lots." Id. Defendant reiterated that "[a]gain, we plan to build on these going forward to try and dig our way out of this hole." Id. As pled, this amounted to an anticipatory repudiation, triggering Plaintiff's right to sue.[5] Gupton, 205 N.C. App. at 139-40, 695 S.E.2d at 768-69; Allen, 95 N.C. App. at 209, 381 S.E.2d at 827. For these reasons, the Court finds that Plaintiff's action is not premature.[6]

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant's Motion to Dismiss" (Doc. No. 4) be **DENIED**.

### IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial

---

[5] Also similar to Gupton, anticipatory repudiation was not expressly pled (*i.e.*, the words were not used), but instead centered on a breach of contract claim. The court noted this was not fatal where the complaint alleged facts sufficient to support anticipatory repudiation, as is the case here. Gupton, 205 N.C. App. at 139, n.1, 695 S.E.2d at 768, n.1 (citations omitted).

[6] Plaintiff also attaches documents to its brief, including a warranty deed noting a conveyance of one of the properties at issue and Zillow listings, indicating that Defendant has sold one of the lots and is in the process of selling others. Plaintiff urges the Court to take judicial notice, but Defendant opposes. The undersigned has found ample factual allegations to support Plaintiff's claim within its Complaint and need not, at this early stage, consider any additional information.

Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED.**

Signed: October 11, 2023

_____
Susan C. Rodriguez
United States Magistrate Judge